UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

CIVIL ACTION NO. 08-CV-12-HRW

MATTHEW OAKES                                                                                      PLAINTIFF

VS:                          **MEMORANDUM OPINION AND ORDER**

DAVID GREEN, GARY BECKSTROM,
   and JOHN REES,                                                                                  DEFENDANTS

\*\*\*   \*\*\*   \*\*\*

The plaintiff, Matthew Oakes ("Oakes"), is an inmate confined at the Little Sandy Correctional Center ("LSCC") in Sandy Hook, Kentucky. Proceeding *pro se*, he has filed a complaint pursuant to 42 U.S.C. § 1983 [Record No. 2]. He has also filed a motion to proceed *in forma pauperis* [Record No. 3], which has been addressed by separate Order.

The Court screens civil rights complaints pursuant to 28 U.S.C. § 1915A. *McGore v. Wrigglesworth*, 114 F.3d 601, 607 08 (6th Cir. 1997). As Oakes is appearing *pro se*, his complaint is held to less stringent standards than those drafted by attorneys. *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). During screening, the allegations in his complaint are taken as true and liberally construed in his favor. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). But the Court must dismiss a case at any time if it determines the action (a) is frivolous or malicious, or (b) fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915(e)(2).

**I.     FACTUAL BACKGROUND**

In March 2007, Oakes was transferred from a prison in the State of Maryland to LSCC

in Kentucky pursuant to an interstate agreement. Upon his arrival at LSCC, he and three other inmates from Maryland were placed in the Special Management Unit ("SMU") of LSCC. Oakes indicates that he was not informed of LSCC's policies and procedures upon arrival at the prison.

At some point shortly after his arrival, Oakes was informed of the prison's policy that inmates must shower daily and shave at least once a week. The Court infers from his Complaint that Oakes is a Muslim. Oakes he voiced his objection to being shaved on religious grounds, and told LSCC staff that prisons in Maryland did not require Muslims to be shaved. LSCC staff responded that the shaving requirement was applied to all inmates regardless of their religious belief, that Oakes was required to comply with the policy, and that if he refused to shave himself that staff would use force to shave his beard.

Apparently Oakes declined to follow the policy. On March 16, 2007, a number of LSCC officers entered Oakes's cell and restrained him. He was then taken to another cell where he was stripped and shackled to a chair. At that time, LSCC staff forcibly cut his hair and shaved his beard.

Oakes filed an Inmate Grievance Form with the warden on March 21, 2007, challenging the requirement that he be clean shaven on the ground that it was contrary to his religious beliefs as a Muslim. On March 27, 2007, responding at the Informal Resolution Stage, Defendant Unit Manager David Green responded that pursuant to LSCC's I.P.P.10-01-01, all inmates must shave before showering each day, and the rule "is in place for reasons of hygiene and security." On April 5, 2007, the Grievance Committee issued a written decision concurring in the result reached by the Unit Manager. On April 10, 2007, the Warden agreed with this result. Oakes appealed this decision on April 17, 2007, but Commissioner Rees denied the appeal by letter

dated June 5, 2007.

Oakes filed his Complaint in this matter on January 23, 2008. Oakes alleges that prisoners in the general population are permitted to wear beards. He alleges that cutting his beard violates his rights under the Free Exercise Clause of the First Amendment, the Due Process Clause under the Fourteenth Amendment, and the Cruel and Unusual Punishments Clause of the Eighth Amendment. Oakes seeks monetary and injunctive relief.

**II. DISCUSSION**

Because the primary basis for Oakes's challenge to LSCC's policy requiring all inmates to shave their beards and cut their hair is based upon his religious beliefs, the Court begins its analysis there. While Oakes cites the First Amendment as the basis for his claim, liberally construing his *pro se* Complaint as required by *Burton* and *Hahn*, the Court will also assess the viability of a statutory claim under the Religious Land Use and Incarcerated Persons Act, 42 U.S.C. §§ 2000cc-2000cc-4 ("RLUIPA").

**A.   First Amendment Claim under the Free Exercise Clause.**

Because prison officials have a legitimate interest in maintaining order and security in a difficult institutional environment, prisoners possess constitutional rights that are "more limited in scope than the constitutional rights held by the individuals in society at large." *Shaw v. Murphy*, 532 U.S. 223, 229 (2001). Thus, "[t]he 'free' exercise of religion thus is rather a misnomer in the prison setting." *Johnson-Bey v. Lane*, 863 F.2d 1308, 1310 (7th Cir. 1988). But they "do not forfeit all constitutional protections by reason of their convictions and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). Inmates do retain their rights under the First Amendment. *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1974). The First

Amendment prevents the government from prohibiting or excessively curtailing the free exercise of religion, *Cruz v. Beto*, 405 U.S. 319, 321 (1972).

Balancing these competing interests, the Supreme Court has held that prison officials may carry out policies which directly or incidentally restrict an inmate's practice of his or her religious beliefs so long as an inmate retains a reasonable opportunity to exercise that faith. *Cruz*, 405 U.S. at 322. In *Turner v. Safley*, 482 U.S. 78 (1987), the Supreme Court clarified that any prison regulation which directly or indirectly inhibits an inmate's ability to practice his or her religion is nonetheless permissible if it is "reasonably related to legitimate penalogical interests." *Id.* at 89; *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (upholding regulation which effectively prevented Muslim prisoners from attending *Jumu'ah*, a weekly congregational meeting commanded by the Koran).

In deciding whether a prison policy satisfies the requirements of the *Turner* test, a court must first assess whether the prison officials have demonstrated "a 'valid, rational connection' between the prison regulation and the legitimate [and neutral] governmental interest put forward to justify it." *Id.* (quoting *Block v. Rutherford*, 468 U.S. 576, 586 (1984)). This factor will favor upholding the challenged regulation if it is legitimate, neutral, and rationally related to the underlying government objective. *Jones v. Campbell*, 23 Fed.Appx. 458, 462 (6th Cir. 2001) (unpublished disposition). But if the prison official's tendered explanation for the connection between the regulation and the asserted goal is "arbitrary or irrational," then the regulation must necessarily fail even if consideration of other factors would otherwise support upholding it. *Turner*, 482 U.S. at 89-90. If the regulation passes this test, the court may consider whether the regulation leaves room for the prisoner to practice his religious beliefs in other ways; whether

the prisoner's requested activity could be accommodated at minimal cost to valid penalogical interests; and whether requiring prison officials to accommodate the prisoner's requested activity would unduly interfere with other valid penalogical concerns or disturb the allocation of prison resources. *Id*. at 90-91. While these factors may be considered, they need not be considered equally or at all when different circumstances suggest the consideration of different factors. *See Spies v. Voinovich*, 173 F.3d 398, 403-04 (6th Cir. 1999).

The grooming regulations followed by LSCC are commonly used at prisons, jails, at detention facilities throughout the country, and have been challenged on the same grounds asserted by Oakes in this case. In *Garner v. Morales*, 2007 WL 2688501 (S.D. Tex. 2007), the court noted that decisions regarding the constitutionality of prison regulations requiring inmates to be clean shaven or trim a beard to one-half inch or less have reached contradictory results. *Id*. at *6 (*comparing Luckette v. Lewis*, 883 F.Supp. 471, 481 (D. Ariz.1995) (prison policy prohibiting quarter-inch beard violated the prisoner's First Amendment free exercise rights) and *Mayweathers v. Terhune*, 328 F. Supp. 2d 1086, 1095 (E.D. Cal. 2004) (prison grooming policy prohibiting beards violated RLUIPA) with *Green v. Polunsky*, 229 F.3d 486, 490-91 (5th Cir. 2000) (requiring Muslim prisoner to be clean shaven does not violate free exercise rights) and *Taylor v. Johnson*, 257 F.3d 470, 472 (5th Cir. 2001) and *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995) (requiring Rastafari prisoner to cut hair and beard does not violate free exercise rights).

The most recent guidance from the Sixth Circuit on this issue is its decision in *Flagner v. Wilkinson*, 241 F.3d 475 (6th Cir. 2001). In *Flagner*, the Sixth Circuit affirmed in part and denied in part the district court's denial of defendants' summary judgment motion on qualified

immunity grounds. In doing so, the panel agreed that genuine issues of material fact remained as to the legitimacy of the defendants' proffered justification for their grooming regulations because the regulations had not been enforced against the plaintiff for several years. *Flagner*, 241 F.3d at 482.

However, the panel held that the defendants were entitled to qualified immunity against any claim for money damages against them. A government official is entitled to qualified immunity against a damage claim for violation of a plaintiff's constitutional rights unless "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). In *Pollock v. Marshall*, 845 F.2d 656, 659-60 (6th Cir. 1988), the Sixth Circuit had upheld a similar prison regulation restricting hair length against a Free Exercise challenge by an inmate, a Lakota Indian, as serving several legitimate penalogical concerns, including "[q]uick identification, removal of a place to hide small contraband, prevention of sanitation problems," and increased risk of sexual attacks on inmates with longer hair because "[l]onger hair increases the attractiveness of an inmate to other inmates." *Pollack*, 845 F.2d at 659. Because the established law created by *Pollack* upheld, rather than invalidated, similar grooming regulations against Free Exercise challenges, the prison official had no reason to believe "that what he is doing violates that right."

The cases collected in the *Garner* opinion reflect an ongoing disagreement in the federal courts regarding the constitutionality of such prison grooming requirements. However, the Sixth Circuit's *Pollack* decision is controlling authority in this Court, and upheld functionally-identical regulations against a Free Exercise claim. Further, LSCC officials have consistently applied their grooming regulations, and hence this case does not implicate the distinguishing grounds

noted in *Flagner*. Accordingly, Oakes' Free Exercise claims fails as a matter of law and must be dismissed. *See Green v. Polunsky*, 229 F.3d 486, 291-92 (5th Cir. 2000) (prison policy of refusing to permit inmates to wear any beard, even quarter inch beard, except for medical reasons did not violate free exercise rights of Muslim inmate who desired to wear quarter inch beard for religious reasons; policy served legitimate penalogical interests, such as preventing prisoners from quickly altering their appearance, and did not deprive inmate of all means of expressing his religious beliefs).

      **B.**    **Claim Under RLUIPA**

In 2000, after the Supreme Court invalidated the Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb--2000bb-4, as it applied to state and local governments in *City of Boerne v. Flores*, 521 U.S. 507 (1997), Congress passed the Religious Land Use and Incarcerated Persons Act, 42 U.S.C. §§2000cc-2000cc-4 ("RLUIPA"). To assert a claim under RLUIPA, an inmate must demonstrate that his right to freely exercise his religious beliefs has been "substantially burdened." *Kikumura v. Hurley*, 242 F.3d 950, 960-61 (10th Cir. 2001). If he can make that showing, then the burden of proof shifts to the government to demonstrate that it has a "compelling interest" that justifies imposing the burden, and that no less-restrictive rule would adequately protect that interest. *Flagner*, 241 F.3d at 481-82. However, courts should apply the "compelling interest" standard with "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005). In particular, the Supreme Court in *Cutter* held that prison security is, in and of itself, a "compelling interest," and courts must defer to the expertise of

institutional officials in this area. *Cutter*, 544 U.S. at 725 n.13. Thus, even if the Court assumes that the grooming regulations substantially burden Oakes' exercise of his faith notwithstanding the availability of other, unencumbered avenues of religious expression, security considerations relating to the identification of inmates, preventing the smuggling of contraband and the display of gang affiliations constitute an interest sufficiently compelling to warrant the restriction. *Id.*; *Garner*, 2007 WL at *10. Oakes' inferred claim under RLUIPA therefore fails as a matter of law and must be dismissed.

        C.    **Claim under the Eighth and Fourteenth Amendments**

Oakes also asserts that the application of prison regulations to him without advance notice of the regulations violates his Due Process rights under the Fourteenth Amendment, and that restraining him while cutting his hair and shaving his beard constitutes Cruel and Unusual Punishment in violation of the Eighth Amendment.

With respect to his Due Process claim, a few courts have held that inmates have a freestanding constitutional right to be provided with current copies of the prison regulations which govern the circumstances of their incarceration. *Hamilton v. Love*, 358 F.Supp. 338 (E.D. Ark. 1973); *Moore v. Janing*, 427 F.Supp. 567 (D. Neb. 1976). On the other hand, one court has held that the failure to provide inmates with a copy of prison rules is not a *per se* constitutional violation without some showing of actual prejudice. *Russell v. Oliver*, 392 F.Supp. 470 (W.D. Va. 1975), *vacated in part on other grounds*, 552 F.2d 115 (4th Cir. 1977).

The Court finds the result in *Russell* more compelling. Absent some showing that the failure to provide notice of prison rules and regulations caused some injury, as where an inmate is found in violation of a prison regulation because he was not given prior notice that such

conduct was prohibited, there is no reason to conclude the inmate's constitutional rights have been violated. Generally speaking, the Due Process clause requires prior notice and an opportunity to be heard before something of value protected by the Constitution, whether property or liberty, is taken. It therefore stands to reason that unless the inmate is deprived of a constitutionally-protected liberty or property interest because of the absence of such notice, the protections of the Due Process are not implicated.

Here, Oakes alleges that he was not told of LSCC's grooming regulation upon his arrival at the prison or until shortly before he was forcibly removed from his cell and shaved. However, the allegations of Oakes' Complaint make clear that the injury of which he complains, the haircut and shave which he was forced to endure, were caused not by his failure to receive prior notice that he was required to shave, but by his intentional refusal to shave on religious grounds once he was told that it was required. Oakes' Complaint negatives any assertion that he would have shaved had he known that this was required -- rather, in his grievances he states that he refused to shave even after he was told of the requirement because his Muslim faith prohibits him from doing so. Accordingly, the absence of prior notice of this requirement was not the cause of any deprivation, and Oakes' Due Process claim fails as a matter of law.

Finally, Oakes' Eighth Amendment claim arising out of the use of restraints fails to state a claim in the absence of any claim or supporting evidence that the use of restraints was excessive, particularly in light of his refusal to cooperate, or that he suffered any physical injury as a result. *Ishaaq v. Compton*, 900 F.Supp. 935 (W.D. Tenn. 1995). Absent such an allegation, the claim fails as a matter of law. 42 U.S.C. § 1997e(e); *Jarriett v. Wilson*, 414 F.3d 634, 640 (6th Cir. 2005); *Merchant v. Hawk-Sawyer*, 2002 WL 927026 (6th Cir. 2002) (unpublished

disposition).

## CONCLUSION

Accordingly, it is **ORDERED** as follows:

(1) Plaintiff's Complaint [Record No. 2] is **DISMISSED WITH PREJUDICE.**

(2) Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the Defendants.

This February 26, 2008.

Signed By:
Henry R Wilhoit Jr.
United States District Judge